IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LEONARD G. YOUNG, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 11-380 |
| v. | ) | District Judge David S. Cercone |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| DR. KAHN, Psychiatrist; *ET AL.*, | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendant Khan (ECF No. 23) be denied and that the Motion to Dismiss filed by Defendant Vishdal (ECF No. 34) be denied. The issues alleged in the Complaint more properly should be resolved following development of a factual record.

**II. REPORT**

Plaintiff, Leonard G. Young, Jr., is a Pennsylvania inmate currently housed at the State Correctional Institution at Smithfield, located in Huntingdon, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against the following Defendants: Dr. Khan, Psychiatrist at SCI-Greene; Dr. Jin Bianghuk, Medical Director at SCI-Greene; Ms. Irma Vishdal, Corrections Health Care Administrator (CHCA) at SCI-Greene; Dr. Bradley, Psychiatrist at SCI-Greene; Dr. Valko, Psychologist at SCI-Greene, and Dr. Dietz, Chief Psychologist at SCI-Greene. Plaintiff sued Defendants both in their official and individual capacities.

1

A. <u>Standard of Review</u>

Presently pending are motions to dismiss filed by Defendant Kahn (ECF no. 23) and Defendant Vishdal (ECF No. 34). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v.Twombly</u>, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. *See also* <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. <u>Pension Benefit Guar. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably

authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).

## B. Plaintiff's Allegations

In his Amended Complaint, Plaintiff avers the following. As of March of 2011, Plaintiff was housed in the Restricted Housing Unit (RHU) at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. Throughout his incarceration, he has been transferred to numerous locations operated by the Pennsylvania Department of Corrections (DOC) for treatment and therapy for his mental health illnesses, which include: Bipolar Disorder; Anti-Social Personality Disorder; Ineffective Coping; Borderline Personality Disorder; Post-Traumatic Stress Disorder; Major Depression; Impulse Control; Attention-Deficit/Hyperactivity Disorder; Schizoeffective Disorder; and Psychosis Disorder. Plaintiff alleges that the conditions of confinement in SCI-Greene's RHU is not an effective means of rehabilitation for prisoners with diagnosed mental health illnesses.

3

Specifically, Plaintiff alleges that Defendants administered to him a combination of psychotropic medications absent the necessary treatment and/or therapeutic activity. As a result, he experienced a deteriorating mental health condition, which includes numerous suicide attempts, placement in the restraint chair, placement under other cruel forms of restraint, and "hunger strikes", amongst other things. Plaintiff also alleges that Defendants Dr. Khan and Ms. Vishdal approved Plaintiff's transfer to SCI Fayette's Special Management Unit (SMU); however, the SMU was "twice as much destructive towards Plaintiff's already debilitating mental health condition." Plaintiff believes that the SMU has a program which is contrary to Plaintiff's mental health needs and it is rather intended for behavioral purposes. He alleges that while at SMU he entered into a "suicide venture" with several attempts of suicide from March 2010 to August 2010. Following his August 31, 2010 suicide attempt, Plaintiff was sent to Westmoreland Hospital, wherein upon his discharge Dr. Lisa Barr detailed discharge orders for plaintiff to be treated for mental health and depression. Following his discharge, Plaintiff was returned to SCI Fayette's SMU.

Following Plaintiff's return to SCI Fayette's SMU, plaintiff alleges to have attempted suicide on or about September 2, 2010, wherein he underwent a 302 (involuntary emergency commitment), 303 (extended involuntary emergency commitment) and a 304 (involuntary commitment for evaluation and treatment) in SCI-Cresson's Mental Health Unit (MHU). On October 1, 2010, Plaintiff was released from both SCI Fayette's SMU and SCI-Cressen's MHU due to his "failure" of the programs. As a result, he was transferred back to SCI-Greene's RHU. Plaintiff contends that Defendant Vishdal verbally informed him that he would not be sent to a mental health facility and that he would remain in the RHU.

4

Plaintiff contends that Dr. Khan prescribed him Trazadone, a tranquilizer, and denied him the right to apply for commitment to a mental health facility. He also contends that Defendant Vishdal failed to submit the proper documentation for recommendation to a mental health treatment/therapeutic facility. He alleges that he has submitted an Inmate Disability Accommodation Form; however Defendant Vishdal failed to respond to it or forward it to a mental health specialist. As a result of the above mentioned allegations, Plaintiff has sustained severe episodes of self-mutilation, suicide attempts and a debilitating mental health condition.

Plaintiff further alleges that Defendant Dr. Khan continuously has violated Plaintiff's confidentiality rights through the disclosure of his mental health issues before inmates and other institutional personnel. Plaintiff contends that Dr. Khan has informed him that he is eligible to receive psychotherapy treatment while in RHU, however Dr. Khan has failed to follow-up with such treatment. Plaintiff further contends that Dr. Khan removed him from his prescribed psychotropic medications, resulting in several psychotic episodes.

Plaintiff alleges that throughout his stay at SCI-Greene's RHU, he was also under the care of Defendant Dr. Bianghuk, a medical doctor. Plaintiff contends that Dr. Bianghuk does not have the proper training and/or certification to treat Plaintiff's mental health condition and that he requested to be released from Dr. Biaghuk's care. Nonetheless, Plaintiff has stayed under the care of Dr. Bianghuk and Plaintiff alleges that Dr. Bianghuk has not consulted him with regard to his mental health care/status. Plaintiff alleges that Dr. Bianghuk has failed to formulate an assessment/treatment plan for Plaintiff's mental health condition, failed to address Plaintiff's mental health needs and failed to recommend Plaintiff's admittance to a mental health treatment facility.

Plaintiff contends that Defendant Dr. Dietz failed to ensure that Plaintiff is housed in an adequate mental health treatment facility and take appropriate measures to correct the actions and/or omission of the mental health defendants. Plaintiff contends that his actions are a result of his mental illnesses rather than what is construed to be "behavioral" problems. Plaintiff indicated that he has accrued approximately forty years of disciplinary custody with a final expiration date of sometime in 2031.

On May 20, 2011, while Plaintiff was housed in SCI-Greene's POC Unit, he experienced a psychotic breakdown whereby he consumed chunks of glass and attempted suicide by hanging himself in his cell. Plaintiff contends that he was placed in a restraint chair for twenty hours and never received attention from a mental health specialist. On June 8, 2011, he again attempted suicide by hanging himself in his cell. He was taken to SCI-Greene's RHU and placed in a "hard cell" without any medical/psychiatric evaluation. Plaintiff continues to endure a debilitating mental health condition with a possibility of permanent psychological and mental harm, physical, emotional pain and suffering and permanent bodily injuries.

In his Amended Complaint, Plaintiff makes numerous claims against Defendants with respect to his conditions of confinement. In Count One, he claims that Defendants violated the Eighth Amendment by failing to provide adequate medical treatment. In Count 2, he claims that Defendants violated the Eighth Amendment by using excessive force in restraining him. In Count 3, he claims that Defendants violated his rights under the Equal Protection Clause by failing to provide him required mental health treatment as required by the Pennsylvania Mental Health Procedures Act, 50 P.S. 7101. In Count 4 he claims that Defendants violated his rights as protected by the Fourteenth Amendment by his placement in restrictive custody. In Count 5 he asserts a claim of medical malpractice and in Count 6, he asserts claims of negligence.

## C. Official Capacity

Plaintiff seeks to assert liability against Defendants in their official and individual capacities. Both Kahn and Vishdal move to dismiss Plaintiff's claims against them in their official capacity. In this regard, a suit against a state government official in his official capacity is really a suit against the state. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). Thus, a suit against Defendants in their official capacity is considered a suit against the Commonwealth of Pennsylvania. *See* Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000). As argued by Defendants, Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution. In this regard, the withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment).

The Commonwealth of Pennsylvania has waived its grant of sovereign immunity under the Eleventh Amendment with regard to several enumerated exceptions set forth in 42 Pa. Cons. Stat. § 8522. Specifically, section 8522(b)(2) provides that sovereign immunity is waived for claims of medical professional liability by acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

All of the defendants are health care employees. Thus, Plaintiff's allegations against Defendants in their official capacity with respect to inadequate medical treatment are sufficient to withstand dismissal on the basis of sovereign immunity. *See* Williams v. Syed, 782 A.2d 1090 (Pa. Commw. 2001) (holding that prisoner stated negligence claim against healthcare administrator and medical-profession exception to sovereign immunity applied to physician and health-care administrator). As such, the pending motions to dismiss should not be granted on the basis of sovereign immunity. Plaintiff's individual liability claims are discussed below.

### D. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on

8

the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly. Carter v. Smith, Civil No. 08-279, 2009 WL 3088428, 6 (E.D. Pa. Sept. 22, 2009). *See also* Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003).

Here, Defendant Vishdal moves to dismiss the Amended Complaint on the basis of lack of personal involvement. However, Plaintiff makes several assertions of personal involvement by Vishdal. Specifically, he claims that Vishdal approved his transfer to SCI Fayette's Special Management Unit (SMU), verbally informed him that he would not be sent to a mental health facility but would remain in the RHU, failed to submit proper documentation for recommendation to a mental health treatment/therapeutic facility and failed to respond to his Inmate Disability Accommodation Form. While the Court makes no determination as to ultimate liability against Defendant Vishdal, Plaintiff's allegations sufficiently allege personal involvement.

Moreover, contrary to Vishdal's assertions, health care administrators are not immune from liability; where the facts indicate personal involvement in an inmate's allegedly deficient medical treatment, courts have refused to grant summary judgment in favor of the administrator. *See, e.g.*, Sappington v. Ulrich, 868 F. Supp. 194 (E.D. Tex. 1994); Kaminsky v. Rosenblum,

737 F. Supp. 1309 (S.D.N.Y. 1990). As it is unclear from this undeveloped record whether Defendant Vishdal had any ability or authority to influence the course of medical treatment he received, or the conditions of his confinement, Plaintiff's claim against her should not be dismissed at this time and her Motion to Dismiss should be denied.

### E. Eighth Amendment

In Count 2, Plaintiff seeks to invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

The Amended Complaint purports to state a claim for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments. In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347

10

(1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Plaintiff's allegations are sufficient to state a claim upon which relief may be granted. Specifically, he claims that he is suffering from various diagnosed mental health conditions. Thus, Plaintiff has pleaded the existence of a serious medical condition. Moreover, Plaintiff alleges that Defendants acted with deliberate indifference. These allegations, taken as true, state a claim for relief based on inadequate medical treatment. Thus, the Motion to Dismiss filed by

11

Defendant Kahn should be denied in this regard. *See, e.g.*, Williams v. Klem, Civil No. 3:07-1044, 2008 WL 4453100, 7 (M.D. Pa. Sept. 30, 2008).

In so recommending, this Court notes that Plaintiff's burden of proving his Eighth Amendment claim is high. A plaintiff alleging a violation of the Eighth Amendment based on inadequate medical treatment must submit adequate medical evidence of a "serious medical need" to satisfy the objective component of the test. Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987) (expert testimony was required to show that inmates' injuries were "serious" so that denial of medical attention violated constitutional right), *cert. denied*, 485 U.S. 991 (1988).

In Boring, the Court of Appeals for the Third Circuit determined that, because plaintiffs failed to produce expert testimony that their injuries were "serious," they failed to meet their burden of proof. The court explained that expert testimony would not necessarily be required in situations where the seriousness of injury or illness would be apparent to a lay person, *e.g.*, a gunshot wound. Boring, 833 F. 2d at 473 (citing City of Revere v. Massachusetts General Hosp., 463 U.S. 239 (1983)). With respect to an ulnar nerve injury and migraine headaches, the Court concluded that a factfinder would not be able to determine that the condition was "serious" because the need for treatment did not appear to "acute." *Id*. With respect to a scalp condition and complaints about dental care, the Court found that the complaints merely reflected a disagreement over the proper means of treatment. The Court noted that, "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.' " *Id*. (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Finally, with respect to a prior knee injury, the Court found that the evidence did not establish an acute condition.

> As laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as "serious." In these

12

> circumstances, the district court properly required expert medical opinion and in its absence properly withdrew the issue from the jury.

Boring, 833 F.2d at 474 (citations omitted).

In addition, Plaintiff must demonstrate that the official's actions constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Gamble, 429 U.S. at 105-106. Deliberate indifference to serious medical needs of prisoners is substantially different than negligently diagnosing or treating a medical condition. Gamble, 429 U.S. at 106. Only the former violates the Eighth Amendment, which requires "more than ordinary lack of due care for the prisoner's interests or safety." Id. (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176 185 (3d Cir. 1993).

> Although prison systems have a duty to provide prisoners with adequate medical care, it is but just that the public be required to care for the prisoner who cannot by reason of deprivation of liberty care for himself. [T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners.

Durmer v. O'Carroll, 991 F.2d at 67 (quotations and citations omitted).

While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical

judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983). Thus, while Plaintiff's Complaint is sufficient to state a claim under the Eighth Amendment, his burden of proving the existence of such a violation is substantial.

### F. Fourteenth Amendment

In Count 3 of his Amended Complaint, Plaintiff asserts procedural due process violations with respect to his confinement in various restricted housing units. This claim invokes rights as protected by the Due Process Clause of the Fourteenth Amendment. In this regard, the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's claims is whether defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial,

14

although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from disciplinary or administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from restrictive detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court

concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

The Supreme Court revisited this issue in Wilkinson v. Austin, 545 U.S. 209 (2005). In that case, prisoners were transferred to a maximum-security prison and placed in segregated confinement for an indefinite duration. The prisoners were denied virtually all sensory and environmental *stimuli*, permitted little human contact and disqualified from parole eligibility. The Court concluded that although "any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id*. at 224.

These cases demonstrate that determining the existence of a liberty interest requires and examination of the duration of the segregative confinement and the conditions endured by the prisoner during that period. Here, Plaintiff complains about indefinite confinement in various restricted housing units. Moreover, he claims that he has received 40 years of disciplinary custody that does not expire until 2031. The duration of this confinement requires the court to review the circumstances of his confinement in order to ascertain whether a liberty interest is implicated. Without a factual record, however, the Court cannot determine the actual conditions of Plaintiff's segregation. Accordingly, Defendant's Motion to Dismiss should not be granted as to Plaintiff's alleged due process violation. *Accord* Cooper v. Diggs, 423 F. App'x 162, 165 (3d Cir. 2011) (remand for further development of the record was required to determine if prisoner could state procedural due process claim based on alleged denial of 90-day reviews of his confinement in restricted housing unit); Wilkins v. Bittenbender, Civil No. 06-2827, 2007 WL 708993, at *2 (3d Cir.2007) ("In order to [determine whether a deprivation is atypical and

significant], a court should perform a fact-specific inquiry evaluating 'the duration of disciplinary confinement and the conditions of that confinement in relation to other prison conditions.' "); Hamm v. Rendell, 166 F. App'x 599, 603 (3d Cir. 2006) (holding that district court, in dismissing inmate's due process claims, failed to consider the duration of disciplinary confinement and the conditions of that confinement in relation to other prison conditions and remanding for factual development); Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (remanding the dismissal of a claim of 90 days' segregation "given the 'fact-intensive inquiry' implied by Sandin"). *Accord* Marion v. Columbia Correction Inst., 559 F.3d 693, 694 (7th Cir. 2009) (remanding the dismissal of a claim of 240 days' segregation).

### G. Certificate of Merit

Defendant Kahn moves to dismiss the complaint for Plaintiff's failure to file a certificate of merit with respect to his Medical Malpractice claim. In this regard, Rule 1042.3 of the Pennsylvania Rules of Civil Procedure states that "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit ..." Furthermore, Rule 1042.6 states that "[t]he prothonotary, on praecipe of the defendant, shall enter a judgment of *non pros* against the plaintiff for failure to file a certificate of merit within the required time ...". Pennsylvania's Certificate of Merit Statute is applicable to Plaintiff's state law medical malpractice claim.

As it is clear that Plaintiff has failed to comply with the Certificate of Merit requirement, the only remaining consideration is whether the Court should grant Plaintiff an extension of time to file a Certificate of Merit. Because Plaintiff is incarcerated and allegedly suffers from various

17

mental disorders, the Court will grant Plaintiff additional time to file a Certificate of Merit. Therefore, Defendant's Motion to Dismiss should not be granted on this basis at this time.

### H. Negligence

Defendant Kahn's final basis for dismissal asserts that Plaintiff's negligence claim in Count VI should be dismissed as duplicative of his medical malpractice claim. At this stage, it is unclear whether Plaintiff may be asserting a claim of negligent infliction of emotional distress. *See* Toney v. Chester Cty. Hosp., ___ A.3d ___, 2011 WL 6413948, at *11 (Pa. Dec. 22, 2011). Accordingly, it is recommended that the Court not grant the motion to dismiss on this basis.

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Motion to Dismiss filed by Defendant Khan (ECF No. 23) be denied and that the Motion to Dismiss filed by Defendant Vishdal (ECF No. 34) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

                                                /s/ Cynthia Reed Eddy
                                                Cynthia Reed Eddy
February 21, 2012                             United States Magistrate Judge

Leonard G. Young, Jr.
GN-9516
SCI Smithfield
1120 Pike Street
PO Box 999
Huntingdon, PA 16652